# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

IN RE:

| | |
|---|---|
| SMF ENERGY CORPORATION | Case Nos.: 12-19084-BKC-RBR |
| H&W PETROLEUM CO., INC. | 12-19085-BKC-RBR |
| SMF SERVICES, INC. | 12-19086-BKC-RBR |
| STREICHER REALTY, INC., | 12-19087-BKC-RBR |

                    Debtors.

Chapter 11
(Jointly Administered)

SONEET R. KAPILA, Liquidating
Trustee of the SMF Energy Liquidating
Trust,

                    Plaintiff,

Adv. Pro. No. 14-01162-RBR

v.

GRANT THORNTON LLP,

                    Defendant.

## DEFENDANT GRANT THORNTON LLP'S
## MOTION TO WITHDRAW THE REFERENCE
## AND MEMORANDUM OF LAW IN SUPPORT

      Grant Thornton LLP ("Grant Thornton") moves to withdraw the reference of this adversary proceeding (the "Lawsuit") to the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), in accordance with Local Bankruptcy Rule 5011-1, FED. R. BANKR. P. 5011, and 28 U.S.C. § 157(d).

22681158

# INTRODUCTION

The Bankruptcy Court lacks constitutional authority to issue final judgments on the claims raised in this case. Plaintiff has demanded a trial by jury before the Bankruptcy Court, and, while Grant Thornton is not opposing Plaintiff's request for a jury trial, Grant Thornton objects to the trial being held before the Bankruptcy Court. Thus, the case ultimately will be tried before this District Court.

Withdrawal of the reference to the Bankruptcy Court now, rather than shortly before trial, will avoid a host of jurisdictional issues creating uncertainty, litigation expense and delay. By withdrawing the reference now, the District Court will eliminate a contested "core versus non-core" debate at the Bankruptcy Court level, and will avoid the unnecessary step of the Bankruptcy Court making recommendations that will have to be reviewed *de novo* by this District Court in any event. Leaving the Lawsuit with the Bankruptcy Court until trial will not protect the federal bankruptcy scheme because it is fundamentally a professional malpractice case, and very few "bankruptcy issues" are implicated.

Additionally, this District Court eventually will have to withdraw the reference, and withdrawing it now will confer advantages that will be lost if the case remains before the Bankruptcy Court until shortly before trial. Withdrawal now will also avoid a scenario that played out before the Seventh Circuit, in which the district court ended up duplicating the discovery and pretrial work of the bankruptcy court due to the Seventh Circuit's interpretation of recent Supreme Court precedent.

For all of the foregoing reasons, and as discussed below, the District Court should withdraw the reference at this time.

**PROCEDURAL BACKGROUND**

On February 7, 2014, plaintiff Soneet R. Kapila, Liquidating Trustee of the SMF Energy Liquidating Trust ("Plaintiff"), filed a complaint against Grant Thornton and initiated the above-captioned adversary proceeding (the "Complaint"). (ECF 1.)

In the Complaint, Plaintiff alleges the following counts against Grant Thornton:

a. Count I – Professional Negligence/Accounting Malpractice

b. Count II – Negligent Misrepresentation

c. Count III – Aiding and Abetting Breach of Fiduciary Duty

d. Count IV – Fraudulent Transfer

e. Count V – Avoidable Preference

f. Count VI – Turnover of Books and Records

The first three counts are pure state law claims, and account for the vast majority of the damages sought by Plaintiff. The Plaintiff affirmatively states that Count IV (fraudulent transfers) is "[b]ased upon the acts, omissions and claims alleged in Counts I through III," making it inseparable from Plaintiff's state law claims. (Compl. ¶ 165.) Count V, requesting recovery of approximately $66,000, is brought under Bankruptcy Code section 547, but is dwarfed by the state law claims. (Compl. ¶ 166.) Count VI, styled "turnover of property of the estate," merely requests documents, some of which Grant Thornton previously offered to produce, subject to securing appropriate confidentiality protection for the documents.

Plaintiff has demanded a jury trial by and before the Bankruptcy Court. Grant Thornton is not opposing Plaintiff's request for a jury trial, but it does not consent to the jury trial being conducted by the Bankruptcy Court. Nor does Grant Thornton consent to the Bankruptcy Court making findings of fact or recommendations, or entering final orders or judgments.

## ARGUMENT AND AUTHORITIES

I. **BECAUSE PLAINTIFF'S TORT CLAIMS ARE NOT CORE MATTERS, AND BECAUSE THE BANKRUPTCY COURT LACKS THE CONSTITUTIONAL AUTHORITY TO TRY PLAINTIFF'S "CORE" CLAIMS, THIS DISTRICT COURT WILL ULTIMATELY DECIDE THIS CASE.**

   A. **Plaintiff's Non-Core Claims Must Be Decided by this District Court.**

Plaintiff's claims for professional negligence, negligent misrepresentation, and aiding and abetting breach of fiduciary duty (Counts I, II and III) are manifestly not "core" matters. Under 28 U.S.C. § 157(c)(1), the Bankruptcy Court lacks statutory authority to enter final judgments on these counts and may only "submit proposed findings of fact and conclusions of law to the district court." These claims ultimately will be decided by the District Court, not by the Bankruptcy Court.

   B. **To the Extent Plaintiff's Claims are Core Claims, They Also Must Be Decided by This District Court.**

While Plaintiff's fraudulent transfer and preference claims (Counts IV and V) are denominated as core matters under 28 U.S.C. § 157(b)(2), the Bankruptcy Court lacks the constitutional authority to issue final judgments over these claims.[1] In *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 2609-10 (2011), the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final judgment on the bankruptcy estate's state law counterclaim against a defendant who had filed a proof of claim against the estate, even though the counterclaim was, under 28 U.S.C. § 157(b)(2)(C), a core proceeding. Under *Stern,* if an action is neither one that "stems from the bankruptcy itself" nor one that "would necessarily be resolved in the claims allowance process," *Stern*, 131 S. Ct. at 2618, the bankruptcy court may

---

[1] By raising legal arguments herein, Grant Thornton does not concede the core nature of any of the Plaintiff's claims at this juncture, and reserves all rights to raise the non-core nature of any such claims.

4

not enter a final judgment on that claim, "no matter how 'core' it might be." *In re Teleservices Grp., Inc.*, 456 B.R. 318, 324 (Bankr. W.D. Mich. 2011).[2]

Grant Thornton has not filed a proof of claim against the bankruptcy estate, meaning that the avoidance claims neither stem from the bankruptcy itself nor will "necessarily be resolved" in the claims allowance process. *See, e.g., Nisselson v. Salim,* No. 12-civ-92-PGG, 2013 WL 1245548 at *4 (S.D.N.Y. Mar. 25, 2013) ("[b]ased on this language from *Stern* and *Granfinanciera*, there is an 'emerging consensus' in this District that 'the Bankruptcy Court may not ordinarily enter final judgment on" preference and fraudulent conveyance claims). As a result, the Bankruptcy Court lacks jurisdiction to enter a final judgment on these claims.

Courts within this District have recognized that, for core matters lying outside a bankruptcy court's constitutional limits, bankruptcy courts are limited to, at most, issuing

---

[2] *Stern* expanded on the Supreme Court's earlier holding in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982), that Congress cannot vest a bankruptcy court with the authority to enter a final judgment resolving a non-core suit for damages arising under state law, because such claims are entirely the creation of state law and are "private rights" (the liability of one person to another). State law damages claims do not fall within any "public rights exception" that allows Congress to authorize a non-Article III tribunal to adjudicate such rights. A claim fits within the "public rights exception," which permits Congress to withdraw adjudication of a cause of action from the judiciary, if it either "'derives from a federal regulatory scheme'" or requires "resolution by an 'expert governmental agency' in order to further a limited regulatory objective within that agency's authority." *Waldman v. Stone*, 698 F.3d 910, 918 (6th Cir. 2012) (citing *Stern*, 131 S. Ct. at 2610-13). Preference and fraudulent transfer claims fit into neither category. *See, e.g., Tabor v. Kelly (In re Davis),* Adversary No. 07–05181–L, 2011 WL 5429095, at *12 (Bankr. W.D. Tenn. Oct. 5, 2011) (citing *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990), and *Katchen v. Landy*, 382 U.S. 323 (1966) (a bankruptcy court can decide a preference action against a creditor of the estate because the determination of whether the creditor received a voidable preference is "part and parcel" of the claims allowance process)); *Executive Benefits Ins. Agency v. Arkison (Matter of Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 561 (9th Cir. 2012), *cert. granted,* 133 S. Ct. 2880 (2013) (the holdings of *Stern* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55–56 (1989), "together point ineluctably to the conclusion that fraudulent conveyance claims, because they do not fall within the public rights exception, cannot be adjudicated by non-Article III judges"); *Nisselson*, 2013 WL 1245548.

recommendations on dispositive motions.³  *See, e.g., Mukumal v. The Stillwater Market Neutral Fund II, L.P. (In re Palm Beach Fin. P's, L.P.),* Adversary No. 11–02865–PGH, 2013 WL 3490652 (S.D. Fla. July 8, 2013) (Marra, J.) (treating bankruptcy court decisions as recommendations where those decisions lie outside constitutional boundaries); *see also* Southern District of Florida Administrative Order No. 2012-25 (March 21, 2012) (district courts shall treat final judgments entered by bankruptcy courts as recommendations where final judgments are found to exceed constitutional limits).  Without Grant Thornton's express consent, which it does not give, the Bankruptcy Court cannot conduct a jury trial in this case, and this District Court must withdraw the reference at some point.  *See* 28 U.S.C. § 157(e); *Mukumal,* 2013 WL 3490652, at *1-2 (recognizing that jury demand may warrant withdrawal of the reference at the appropriate time).

Grant Thornton recognizes that some courts—mostly bankruptcy courts—have held that a bankruptcy court is empowered to enter final judgments on fraudulent transfer claims under Bankruptcy Code sections 544 and 548 even where the defendant has not filed a proof of claim. *See, e.g., Bakst v. United States (In re Kane & Kane, Inc.),* Adversary No. 10–01022–EPK, 2013 WL 1197609 (Bankr. S.D. Fla. Mar. 25, 2013) (Kimball, J.) (fraudulent conveyance claims—not state tort claims—were core matters for which bankruptcy court may enter final judgment, *Stern* notwithstanding).  This District Court has acknowledged the uncertainty in this area.  *See Stettin v. Centurion Structured Growth, LLC,* No. 11–60400–CIV, 2011 WL 7413861 (S.D. Fla. Dec. 19, 2011) (Jordan, J.) (limiting bankruptcy court's fraudulent transfer and preference claim adjudication to recommendation, "in light of the Supreme Court's opinion in [*Stern*] the uncertainties concerning the extent of its application….").  Grant Thornton respectfully submits

---

³ As discussed later, it is not even clear that a bankruptcy court is authorized to make recommendations in certain core matters.

that cases concluding that a bankruptcy court may enter final judgments are at odds with the unavoidable implications of *Stern* and *Granfinanciara*, as recognized by recent decisions cited in this brief from the Ninth and Seventh Circuits and numerous district courts.  Yet even if this Court accepts the premise that the Plaintiff's fraudulent conveyance claim—which is dwarfed by its state law tort claims—is a matter for which the Bankruptcy Court may enter final judgment, the matter still should not remain with the Bankruptcy Court for pretrial matters, for reasons discussed in the following section.

## II. THE DISTRICT COURT SHOULD WITHDRAW THE REFERENCE FOR CAUSE AT AN EARLY STAGE IN THIS LAWSUIT.

"The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  "Cause" is not defined in the Bankruptcy Code.  *See, e.g., In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991).[4]

Courts within the Eleventh Circuit consider the following factors to assess cause to withdraw the reference: (1) the advancement of uniformity in bankruptcy administration, (2) decreasing forum-shopping and confusion, (3) promoting the economical use of the parties' resources, (4) facilitating the bankruptcy process, (5) whether the claim is core or non-core, (6) efficient use of judicial resources, (7) a jury demand, and (8) prevention of delay.  *See, e.g., Mukumal,* 2013 WL 3490652 (citing *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir. 2000)); *cf. British Am. Isle of Venice (BVI) Ltd. v. Fullerton (In re British Am. Ins. Co.*

---

[4] The Bankruptcy Court's pretrial scheduling order dated February 10, 2014 (ECF 4), as extended by its order dated March 12, 2014 (ECF 13), sets the deadline for parties to move to withdraw the reference at November 28, 2014, ten days prior to the December 9, 2014 pretrial conference.  Grant Thornton's motion to withdraw the reference is timely.

*Ltd.)*, Adv. Pro. No. 11-03118, Case No. 12-81330 (S.D. Fla. Dec. 21, 2012) (Cohn, J.); *Stettin* 2011 WL 7413861, at *2.

These traditional "for cause" factors lead to but one conclusion: the District Court should withdraw the reference for this Lawsuit now rather than later.

    **A.**    **Plaintiff's Jury Demand Justifies Withdrawing the Reference.**

Plaintiff has demanded a jury trial, so this case must be tried by a jury unless all parties consent to a bench trial. FED. R. BANKR. P. 9015 (incorporating FED. R. CIV. P. 38 and 39); *Committee of Unsecured Creditors v. Mem'l Mission Med. Ctr., Inc. (In re N.C. Hosp. Ass'n Trust Fund)*, 112 B.R. 759, 761-62 (Bankr. E.D.N.C. 1990); *see also Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (unless the defendant submits a claim against the bankruptcy estate, "the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer," and "[i]n those circumstances the preference defendant is entitled to a jury trial").

Courts in the Southern District of Florida have recognized that a jury demand, by itself, is sufficient reason to withdraw the reference. *See, e.g., Mukumal*, 2013 WL 3490652, at *1 ("Notably, 'a demand for a jury trial in a non-core case can, in itself, provide sufficient cause to withdraw the reference.'"); *British Am. Isle of Venice*, Adv. Pro. No. 11-03118, Case No. 12-81330, at 5 ("Because plaintiffs have demanded a trial by jury and the parties have not consented to a jury trial before the Bankruptcy Court, it is necessary to withdraw the reference of both cases for trial.").

    **B.**    **The Non-Core Nature of Plaintiff's Claims Favors Withdrawal of the Reference.**

The predominance of non-core matters in an adversary proceeding favors withdrawal of the reference. *See, e.g., Gunnallen Fin., Inc. v. U.S. Specialty Ins. Co. (In re Gunnallen Fin.,*

8

*Inc.),* No. 8:10–cv–2855–T–24, 2011 WL 398054, at *2 (M.D. Fla. Feb. 3, 2011) ("[I]f a proceeding is found to be non-core, there is a stronger argument for withdrawing the reference."); *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 275 (M.D. Fla. 2002) ("Since a district court is obligated to review *de novo* the findings of a bankruptcy court on non-core matters, a determination that a proceeding is non-core weighs in favor of transferring the matter to a district court."). Here, the Lawsuit is fundamentally a professional malpractice action, and the overwhelming substance of the claims lies outside the Bankruptcy Court's core jurisdiction. The argument for withdrawing the reference is correspondingly stronger as a result.

   **C.**  **Judicial Efficiencies Warrant Withdrawal of the Reference Now.**

  Plaintiff's demand for a jury trial, Grant Thornton's refusal to consent to trial of the case before the Bankruptcy Court, and the presence of *Stern* issues calling into question the Bankruptcy Court's jurisdiction all lead to the conclusion that this Lawsuit must be tried before this Court. The only question is whether immediate withdrawal of the reference now would serve the interests of judicial economy, and the answer is yes.

  Grant Thornton recognizes that withdrawal is in this District Court's discretion, and that some courts prefer to delay withdrawal until the case is ready for trial. But because (a) the Lawsuit presents predominately state law claims over which the Bankruptcy Court has no specialized expertise, (b) delaying the ultimate withdrawal of the reference would result in a duplication of effort between the Bankruptcy Court and this District Court (as discussed below), and (c) withdrawal now, as opposed to later, avoids a briar patch of jurisdictional and practical issues regarding the Bankruptcy Court's jurisdiction, including a need to "reset" the case after much work has been completed before the Bankruptcy Court, withdrawal sooner rather than later is the most practical approach under the specific facts of this case.

### 1. Little, If Anything, Is To Be Gained By Referring the Case to the Bankruptcy Court.

While there is some preference "to let expert bankruptcy judges determine bankruptcy matters to the greatest extent possible," bankruptcy matters play but a minor role in this Lawsuit. *Stettin v. Regent Capital P's, LLC (In re Rothstein, Rosenfeldt, Adler, P.A.),* 2012 WL 882497, at *5 (S.D. Fla. March 14, 2012). Of the five substantive counts in the Complaint, three (professional negligence, negligent misrepresentation and aiding and abetting breach of fiduciary duty) are pure state law malpractice claims – accounting for approximately 98% of the damages sought by Plaintiff – over which the Bankruptcy Court possesses no more specialized knowledge than any other court of general jurisdiction. The fourth count (fraudulent transfers) is, by its very allegations, premised upon Plaintiff prevailing on his state law malpractice claims. (Compl. ¶ 165.) Only the fifth count, preferential transfers, alleges a true bankruptcy cause of action, and this count is minor in the context of Plaintiff's Complaint: Plaintiff seeks approximately $66,000 in the preference claim, in contrast to upwards of $68 million sought through Plaintiff's tort claims. *See* Compl. ¶ 166 (portion of table identifying allegedly recoverable payments between February 3, 2012 and March 21, 2012).[5]

No other discernable "bankruptcy issues" are implicated in or potentially affected by this Lawsuit.[6] SMF Energy's chapter 11 plan was confirmed more than a year ago and the estate is in the hands of a liquidating trust. This Lawsuit is simply a means of providing additional funds

---

[5] Count VI, a request for turnover of accounting books and records, seeks no monetary relief. Grant Thornton previously offered to produce some of this information, subject to appropriate confidentiality protection. Count VI will most likely be rendered moot in document production through normal discovery.

[6] Although in Count IV Plaintiff alleges relief under Bankruptcy Code section 548, the predicate acts needed for recovery on this claim are, as the Plaintiff concedes in Complaint paragraph 165, "based on the acts, omissions and claims alleged in Counts I through III," *i.e.,* the state law claims.

for creditors under a wind-down mechanism that has been running without interruption since 2012. The Bankruptcy Court does not need to manage this Lawsuit to protect either its jurisdiction or the integrity of SMF's liquidating plan. In terms of conservation of judicial resources, advancement of uniformity in bankruptcy administration, or prevention of delay, nothing is to be gained by making a "practice run" before the Bankruptcy Court. *See Veys v. Riske*, 2007 WL 4246172, at *3 (W.D. Wash. Nov. 28, 2007) ("Withdrawal would not disrupt the uniformity of bankruptcy administration because . . [the] adversary complaint is largely independent from issues of bankruptcy administration.").

### 2. The District Court Can Avoid *Stern* and "Core/Non-Core" Entanglements By Withdrawing the Reference Now Rather Than Shortly Before Trial.

This Court has the full jurisdiction Congress confers upon Article III district courts. The Bankruptcy Court, by contrast, has only a limited subset of the District Court's jurisdiction. For adversary proceedings involving purely bankruptcy issues—say, nondischargeability complaints or complaints to avoid liens—it makes perfect sense to allow a bankruptcy court to give both parties and district courts the benefit of its bankruptcy-specific expertise.

The predominance of state law claims in this case, however, introduces snags that encumber rather than streamline the litigation process when referred to the Bankruptcy Court. Leaving the referral intact for pretrial matters will require the Bankruptcy Court (a) to determine whether Counts I through V are core or non-core matters, and (b) to determine whether, if the matters are core, it has the constitutional authority under *Stern v. Marshall* to enter a final judgment and the statutory authority to make recommendations. Once that layer of preliminary questions is answered and the case is ready for this Court's review, this Court will then be required to determine whether the Bankruptcy Court was correct in (i) its core and non-core

determinations and (ii) its analysis of *Stern* (because the standard of review this Court will be required to apply turns on the Bankruptcy Court's constitutional and statutory authority to enter final judgments).

To the extent Plaintiff's claims are core matters, another constitutional problem raised by *Stern* muddies the Bankruptcy Court's waters. Section 157(c)(1) of the Judiciary Code, which authorizes bankruptcy courts to enter proposed findings of fact, is limited by its terms to non-core matters. Other courts have questioned whether any statutory mechanism permits a bankruptcy court to hear and make recommendations to the district court with regard to a core proceeding over which the bankruptcy court lacks constitutional authority under *Stern*. *See Waldman*, 698 F.3d at 921; *Wellness Intern. Network, Ltd. v. Sharif,* 727 F.3d 751, 776-77 (7th Cir. 2013) (bankruptcy courts lack statutory authority to make recommendations or preside over pretrial matters, *including discovery*); *but see, e.g., Stettin v. TD Bank, N.A. (In re Rothstein, Rosenfeldt, Adler, P.A.),* No. 11–62612–CIV, 2012 WL 882497 at *3 (S.D. Fla. Mar. 9, 2012) (bankruptcy courts may issue recommendations on core matters). The uncertainty surrounding this issue has reached a level that the Supreme Court has granted certiorari in order to address, among other things, whether a bankruptcy court may issue recommendations on core matters. *See In re Bellingham Ins. Agency, Inc.,* 702 F.3d 553, 565-66 (9th Cir. 2012), *cert. granted, Executive Benefits Ins. Agency v. Arkison,* 133 S. Ct. 2880 (2013).

In *Sharif, supra,* the Seventh Circuit addressed the practical implications of allowing a bankruptcy court to preside over a core matter over which its constitutional authority has been circumscribed:

> Assuming that the alter-ego claim is in fact a core matter, it is difficult to find a statutory basis on which the district court could rely to treat the bankruptcy court's order as proposed findings and conclusions. To be sure, the bankruptcy court never reached the merits of the claim because it entered default judgment as

> a discovery sanction. But there is no statutory provision authorizing a bankruptcy court to preside over discovery, apart from its authority over core and noncore matters. It is true that magistrate judges often preside over pretrial matters such as discovery, even if the district court ultimately decides the claims for which discovery is sought, but 28 U.S.C. § 636(b)(1)(A) expressly authorizes a district judge to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," with certain exceptions and subject to reconsideration by the district judge if "the magistrate judge's order is clearly erroneous or contrary to law." No analogous statutory authorization exists for bankruptcy judges. It appears, therefore, that if the alter-ego claim is in fact a core proceeding, the only statutorily authorized remedy would be for the district court to withdraw the reference, *see* § 157(d), and then set a new discovery schedule. Of course, this would present a windfall to Sharif, but it is difficult to see any other solution under the peculiar circumstances of this case.
>
> ***
>
> [If] the [district] court determines the alter-ego claim to be a core proceeding, then it shall order that the reference of the alter-ego claim to the bankruptcy court be withdrawn and conduct fresh discovery proceedings in the district court, though the district judge will have the discretion in setting a more abbreviated schedule given that prior discovery has been had.

*Sharif,* 727 F.3d at 776-77. The result in *Sharif* was to move the parties back several spaces. Should the Eleventh Circuit decide to follow the Seventh Circuit, a similar result could follow.

After the aforementioned layers of pretrial litigation are completed before the Bankruptcy Court, and the attendant delay and expense in resolving them are absorbed by the parties, this Court will then be required either to try the case to a jury independently (should the case go to trial), or review *de novo* the Bankruptcy Court's recommendations (should the case be decided on dispositive motion), making virtually moot everything done at the Bankruptcy Court level. *See, e.g., Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transport Corp. (In re FMI Forwarding Co., Inc.)*, Nos. 00-B-41815(CB), 01-Civ-9462(DAB), 01–02992(CB), 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004) (withdrawing the reference would further rather than undermine judicial economy because withdrawal would allow for the "claim to be adjudicated and disposed of in one proceeding, thereby saving judicial and party

13

time and resources") (citations omitted); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("[A]djudicating all of the claims . . . in the district court . . . dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy judge . . . . [and] will foster the economical use of the resources of the litigants."); *Solutia Inc. v. FMC Corp.,* No. 04-Civ-2842-WHP, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) (litigating in the district court would conserve judicial resources "instead of having two courts administer two rounds of briefing and argument on the same issues.").

Immediate withdrawal early in the case would avoid this duplication of judicial effort, uncertainty, additional litigation and further delay. *See Everett v. MCI, Inc. (In re WorldCom, Inc.)*, Adversary No. 07-1792-AJG, 2008 WL 2441062, at *6 (S.D.N.Y. June 18, 2008) (withdrawal would increase judicial efficiency when the proceeding was "in the relatively early stages of litigation" and "the Bankruptcy Court had made no rulings in the case"). While many adversary proceedings are well-suited to bankruptcy court oversight, this one is not. Here, the most "practical remedy" is the immediate withdrawal of the reference.

## GRANT THORNTON'S DESIGNATION OF THE RECORD

Pursuant to Bankruptcy Local Rule 5011-1(B), Grant Thornton designates the following portions of the record as reasonably necessary and pertinent to the District Court's consideration of this Motion to Withdraw the Reference:

*Kapila v. Grant Thornton*, Adv. Pro. 14-01162-RBR:

1. Adversary Complaint for Damages and to Avoid and Recover Avoidable Transfers and Demand for Jury Trial By and Before the Bankruptcy Court [ECF 1];

2. Demand for Jury Trial [ECF 2];

3. Summons [ECF 3];

4. Order Setting Disclosure and Filing Requirements for Pretrial and Trial [ECF 4];

5. Order Granting Motion to Extend Time [ECF 8];

6. Order Granting Motion to Continue Hearing [ECF 13]; and

7. Defendant Grant Thornton LLP's Motion to Dismiss in Part Adversary Complaint for Damages and to Avoid and Recover Avoidable Transfers [ECF 28].

## CONCLUSION

For the foregoing reasons, Grant Thornton respectfully requests that the District Court immediately withdraw the reference for this proceeding to the Bankruptcy Court.

Dated this 18th day of April, 2014.

    Respectfully submitted,
    MRACHEK, FITZGERALD, ROSE, KONOPKA, THOMAS & WEISS, P.A.
    505 S. Flagler Drive, Suite 600
    West Palm Beach, FL 33401
    Telephone: (561) 655-2250
    Facsimile: (561) 655-5537
    Email: lmrachek@mrachek-law.com

    By: /s/ L. Louis Mrachek
        L. Louis Mrachek
        Florida Bar No. 182880

    and

    Elizabeth V. Tanis (pro hac vice)
    Georgia Bar No. 697415
    email: etanis@kslaw.com
    Cheri A. Grosvenor (pro hac vice)
    Georgia Bar No. 314360
    email: cgrosvenor@kslaw.com
    KING & SPALDING LLP
    1180 Peachtree St., N.E.
    Atlanta, GA 30309-3521
    Telephone: (404) 572-4600
    Facsimile: (404) 572-5100

    Attorneys for Defendant Grant Thornton, LLP

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of April, 2014, a copy of the foregoing was served via the CM/ECF system upon the parties listed on the below Service List who have consented to electronic notice and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

                                        By:  /s/ L. Louis Mrachek
                                              L. Louis Mrachek
                                              Florida Bar No. 182880

**SERVICE LIST**

**Served Via CM/ECF Notification**

David C. Cimo, Esq. on behalf of Liquidating Trustee Soneet R. Kapila
dcimo@gjb-law.com; gjbecf@gjb-law.com