UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

| | |
|---|---|
| In re<br><br>SMF ENERGY CORPORATION<br>H&W PETROLEUM COMPANY, INC.<br>SMF SERVICES, INC.<br>STREICHER REALTY, INC.<br><br>    Debtors.<br>_____/ | CASE NOS. 12-19084-BKC-RBR,<br>12-19085-BKC-RBR,<br>12-19086-BKC-RBR &<br>12-19087-BKC-RBR<br><br>CHAPTER 11<br>(JOINTLY ADMINISTERED) |
| SONEET R. KAPILA, Liquidating<br>Trustee of the SMF Energy Liquidating<br>Trust,<br><br>    Plaintiff,<br><br>v.<br><br>GRANT THORNTON LLP, an Illinois<br>limited liability company,<br><br>    Defendant.<br>_____/ | ADV. NO. 14-01162-BKC-RBR-A |

**TRUSTEE'S RESPONSE
IN OPPOSITION TO DEFENDANT GRANT THORNTON, LLP'S MOTION
TO WITHDRAW THE REFERENCE AND MEMORANDUM OF LAW IN SUPPORT**

    The Plaintiff, SONEET R. KAPILA ("Kapila" or the "Trustee"), Liquidating Trustee of the SMF Energy Liquidating Trust, files this Objection and Response in Opposition to Grant Thornton, LLP's ("Grant Thornton" or "Defendant") *Motion to Withdraw the Reference and Memorandum of Law in Support* [Adv. Pro. ECF No. 29] ("Motion"), and in opposition to the Motion respectfully states:

## INTRODUCTION

The Defendant advances the now widely-rejected premise that the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) requires an immediate withdrawal of the reference to the Bankruptcy Court. In this District, there is a Standing Referral Order (defined below) that deals with this very situation and Defendant offers no compelling reason to depart from that order. The Trustee concedes that, at some point, it will be appropriate for the reference to the Bankruptcy Court to be withdrawn in order to allow the case to be tried in the District Court before a jury.[1] However, the Trustee disagrees with Defendant's position that this case requires departure from the established protocol in this District or that the reference should be withdrawn now. Nothing in *Stern* requires a change in the methodology and timing of reference withdrawal that has worked so well for so long in this District and others throughout the country. Finally, conventional notions of mandatory withdrawal as applied in this District do not require withdrawal of the reference in this proceeding; nor do theories of permissive withdrawal suggest that the District Court should withdraw the reference forthwith. Accordingly, the Trustee files this Objection and objects to the entry of an order withdrawing the reference of the adversary proceeding to the District Court at this time, and requests that this case be treated consistently with the parameters set forth in this District's standing order.

## FACTUAL BACKGROUND

1.  On April 15, 2012, the Debtors, SMF Energy Corporation ("SMF"), H&W Petroleum Company, Inc. ("H&W"), SMF Services, Inc. ("SMFSI"), and Streicher Realty, Inc. ("Streicher") (sometimes collectively referred to herein as the "Debtors"), commenced these cases by filing voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the

---

[1] The Trustee has demanded a jury trial in his complaint. *See* Compl. at ¶182. Defendant does not oppose the Trustee's request for a jury trial. *See* Motion at pg. 3.

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida[2]. (Compl. ¶1).

2. The Plaintiff, Kapila, is the duly appointed Liquidating Trustee for the SMF Energy Liquidating Trust pursuant to that certain Liquidating Trust Agreement filed in conjunction with the Debtors' Amended Joint Plan of Liquidation (the "Plan"), which Plan was confirmed by the Bankruptcy Court on December 14, 2012. (Compl. ¶3).

3. The claims at issue in this adversary proceeding seek the recovery of damages and other relief from Defendant for Professional Negligence/Accounting Malpractice (Count I); Negligent Misrepresentation (Count II); Aiding and Abetting Breach of Fiduciary Duty (Count III)(Counts I-III are collectively referred to as the "Tort Claims"); Avoidance of Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (Count IV); Avoidance of Preferential Transfers pursuant to section 547 of the Bankruptcy Code (Count V); Turnover of Books and Records pursuant to Section 542 of the Bankruptcy Code (Count VI)(Counts IV-VI are collectively referred to as the "Bankruptcy Claims") all arising out of certain auditing, accounting and other services provided by Defendant and its affiliates to the Debtors prior to the Petition Date. (Compl. ¶8; Counts I-VI).

Specifically, Grant Thornton audited the financial statements of the Debtors, for each of the fiscal years ending June 30, 2005 through June 30, 2011, and issued unqualified opinions on these financial statements. Each of the foregoing audits shall collectively be referred to herein as the "Audits." Grant Thornton also performed reviews (the "Reviews") of the Debtors' interim financial information for each of the first three quarters for the fiscal years ending June 30, 2005 through June 30, 2011, as well as for each of the first two quarters for the fiscal year ending June 30, 2012. In addition to the Audit and the Review services, on occasion Grant Thornton provided

---

[2] By orders of the Bankruptcy Court, each of the Debtors is being jointly administered under bankruptcy Case No. 12-19084-BKC-RBR.

3

other accounting and tax services for the Debtors. (Compl. ¶9).

4. The Debtors' main business was the delivery of gasoline and other fuel products and related services to businesses which maintained fleets of vehicles and bulk gasoline tanks. (Compl. ¶10). As set forth herein, certain of the Debtors' officers breached their respective fiduciary duties by, among other things, implementing and perpetuating improper billing practices that surreptitiously increased charges to the Debtors' customers. (Compl. ¶11).

5. These billing practices took different forms, but principally included: (i) billing customers for gallons of fuel that were not delivered; (ii) artificially increasing the agreed upon price per gallon of fuel products; (iii) artificially increasing the agreed upon service charges for delivery of those fuel products; and (iv) artificially increasing the taxes charged on actual gallons delivered. (Compl. ¶12).

6. These charges were hidden from customers and certain of the officers, employees, and directors of the Debtors, and undisclosed in public filings. Charges were hidden from customers because, among other things, they violated the acceptable and agreed upon terms of contracts between the Debtors and their customers. (Compl. ¶13). Over time, these improper and hidden charges grew to become a significant percentage of the revenue and business model of the Debtors. Essentially, the charges masked the true financial condition of the Debtors. (Compl. ¶14).

7. Defendant's acts, omissions and breaches of their professional standard of care proximately caused millions of dollars in damages to the Debtors. As a result, the Trustee sued Defendant. (Compl. ¶15).

## MEMORANDUM OF LAW

The Defendant argues that cause exists to withdraw the reference because of (i) purported Constitutional concerns relating to the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct.

2594 (2011); and (ii) conventional notions of permissive withdrawal. This Court should reject each of Defendant's arguments in turn for the reasons explained below.

I.    ***Stern v. Marshall*** **Forms No Basis for an Immediate Withdrawal of the Reference.**

Defendant asserts that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), provides cause for an immediate withdrawal of the reference.[3] This is unsurprising -- *Stern* has become the "mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *In re Ambac Fin. Group, Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) (rejecting *Stern*-based argument).

Contrary to Defendant's arguments, *Stern* forms no basis for granting the Motion. *Stern* was concerned with the extremely narrow issue of whether a bankruptcy court, as a non-Article III court, could constitutionally enter final orders and judgments against a non-creditor on a counterclaim that (a) did not stem from the bankruptcy case itself, and (b) would not necessarily be resolved in the claims allowance process. *In re Safety Harbor Resort and Spa*, 456 B.R. 703, 714 (Bankr. M.D. Fla. 2011) (*citing Stern*, 131 S. Ct. at 2620) (discussing and analyzing *Stern* at length).

Nothing in *Stern* forms a basis for the immediate withdrawal of the reference. In fact, the Southern District of Florida Standing Order of Referral, Administrative Order 2012-25 (March 27, 2012) (the "Standing Referral Order"), was definitively amended to make clear that in this District *Stern* will have little or no impact on the division of labor between district judges and bankruptcy judges. The Standing Referral Order, as amended, provides in pertinent part: "if a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding ...

---

[3] The Defendant intersperses a number of "jurisdictional" concerns among its arguments. It should be noted that *Stern* dealt with constitutional authority, not jurisdiction. *See In re Land*, 2012 WL 3239064, *3 (Bankr. N.D. Ala. 2012) ("*Stern* dealt with whether a bankruptcy court may determine, *i.e.* enter a final order ... there are no jurisdictional consequences as a result of the decision in Stern."). Moreover, the Motion contains no actual, substantive argument concerning the Bankruptcy Court's jurisdiction. There simply is none.

5

determined to be a core matter, the bankruptcy judge shall, unless otherwise directed by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law[.]" Further, the Standing Referral Order authorizes district courts to treat bankruptcy court final orders as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy court's entry of a final order was inconsistent with Article III. Clearly, the District Courts in this District have determined that *Stern* generally does **not** constitute cause for the immediate withdrawal of the reference, contrary to the arguments in the Motion.

Further, even if a bankruptcy court enters a final judgment and the district court later determines that the entry of such final judgment was inconsistent with Article III, the Standing Referral Order authorizes the district court to treat such final judgment as proposed findings of fact and conclusions of law. *Id.* Accordingly, under the Standing Referral Order, in no event will denial of the instant Motion result in the Bankruptcy Court entering an order or judgment that violates Article III. *In re Palm Beach Fin. Partners, L.P.*, 13-80101-CIV, 2013 WL 2035453 (S.D. Fla. May 14, 2013)("The bankruptcy court can, and should, initially determine whether it has the constitutional authority to render a final judgment on a particular issue. The Court will review the specific legal question of constitutional authority *de novo*, and if the Court determines that the bankruptcy court erred in rendering a final judgment, it will simply treat the Court's "decision" as a report and recommendation.") Moreover, even before the amendments to the Standing Referral Order, District Courts in the Southern District of Florida repeatedly and uniformly rejected motions to withdraw the reference based on *Stern*. Instead, each District Court presented with such a motion has determined that it is appropriate to leave the reference in place – ***even when the defendant has a right to jury trial*** – and allow the bankruptcy court to, at a minimum, issue a report and recommendation or proposed findings of fact and conclusions of law concerning any issue with respect to which the bankruptcy court may lack constitutional authority under *Stern*. *See Stettin v.*

6

*Don King Productions, Inc.*, Case No. 12-60663, May 16, 2012 Order [ECF No. 5] (Cohn, J.) ("given the Bankruptcy Court's familiarity with these proceedings, this Court will refer all case dispositive motions to the Bankruptcy Court for a report and recommendation"); *Kapila v. Schlect*, Case No. 12-20910, April 10, 2012 Order [ECF No. 37] (Seitz, J.) ("*Stern* does not change the legal landscape as much as [movant] suggests and provides no obstacle to the reference remaining in place until the case is ready for trial"); *Stettin v. Regent Capital Partners*, 2012 WL 882497 (S.D. Fla. March 14, 2012) (Marra, J.) ("Withdrawing the reference simply due to the uncertainty caused by *Stern* is a drastic remedy that would hamper judicial efficiency[.]" (quoting *In re Extended Stay, Inc.*, 2011 WL 532258, at *7 (S.D.N.Y. Nov. 10, 2011)); *Stettin v. Regent Capital Partners, et al.*, Case No. 11-62649, March 3, 2012 Order [ECF No. 7] (Williams, J.); *Stettin v. Birks & Mayors, et al.*, Case No. 12-60121, January 31, 2012 Order [ECF No. 22] (Scola, J.); *Kapila v. Soffer*, Case No. 11-24523, December 30, 2011 Order [ECF No. 8] (Cooke, J.); *Stettin v. Centurion Structured Growth LLC*, 2011 WL 7413861 (S.D. Fla. Dec. 19, 2011) (Jordan, J.); *Kapila v. Soffer, et al.*, Case No. 11-24521, December 16, 2011 Order [ECF No. 5] (Graham, J.).

As is the practice in the Southern District of Florida, this Court should leave the reference in place and allow the Bankruptcy Court to handle all pretrial matters. Accordingly, the Court should deny the Motion.

## II. The Applicable Standard Strongly Supports Leaving the Reference in Place.

District Courts have original and exclusive jurisdiction of all cases under Title 11, and may refer these cases to bankruptcy courts. 28 U.S.C. §§ 157(a), 1334(a). Parties may petition the District Court to withdraw that reference and relieve the bankruptcy court of jurisdiction. 28 U.S.C. § 157(d). Withdrawal of the reference may be mandatory or permissive. The Defendant does not suggest that the court *must* withdraw the reference, but rather suggests that the court *should* withdraw the reference.

In such circumstances, the Eleventh Circuit has stated and reiterated that a movant's burden to show "cause" to withdraw the reference under § 157(d) is "not an empty requirement." *In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000) (*citing In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991)). To the contrary, "without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received" by a district court. *Chrysler Credit Corp. v. Fifth Third Bank of Columbus (In re Onyx Motor Car Corp.)*, 116 B.R. 89, 91 (S.D. Ohio 1990).

To determine whether a movant has carried its burden of demonstrating cause to withdraw the reference, courts in the Eleventh Circuit consider the following factors: (i) advancing uniformity in bankruptcy administration; (ii) decreasing forum shopping and confusion; (iii) promoting the economical use of the parties' resources; (iv) facilitating the bankruptcy process; (v) whether the claims at issue are core or non-core; (vi) efficient use of judicial resources; (vii) any jury demand; and (viii) prevention of delay." *Stettin v. Centurion Structured Growth LLC*, 2011 WL 7413861, *2 (S.D. Fla. Dec. 19, 2011).

In any event, in the present case, as detailed below, the relevant factors clearly support leaving the reference in place with the Bankruptcy Court.

### (i) *The Defendant Has Not Made a Jury Trial Demand.*

The Defendant has not yet made a jury trial demand in this case. Nonetheless, it cites to its hypothetical future demand for a jury trial before the District Court as a basis to withdraw the reference immediately. Courts routinely acknowledge the relevance of a party's right to a jury trial in district court in deciding whether to withdraw reference to the bankruptcy court; however, courts also routinely deny a party's request for immediate withdrawal of reference where the basis of the request is a party's entitlement to a jury trial. *In re Tousa, Inc.*, 1060206-MC, 2010 WL 1644456 (S.D. Fla. Apr. 19, 2010); citing *Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179

(D.Nev.1993) ("The filing of a jury demand in a non-core proceeding which is related to a bankruptcy case should not result in the District Judge on a knee jerk basis withdrawing the order of reference."); *In re Apponline.Com., Inc.*, 303 B.R. 723, 727 (E.D.N.Y.2004) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme.") (quotation omitted); *In re Hardesty*, 190 B.R. at 656 ("Even if a jury trial may constitute cause for withdrawal, the district court may decline to withdraw the reference until the case is ready for trial.").

A demand for a jury trial standing alone is often found to be insufficient cause for withdrawal if the motion is made too early in the proceedings. *In re Palm Beach Fin. Partners, L.P.*, 13-80102-CIV, 2013 WL 2036161 (S.D. Fla. May 14, 2013); quoting *In re Winstar Communications, Inc.*, 321 B.R. 761, 764 (D.Del.2005); *Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61–62 (S.D.N.Y.1992). Indeed, "a court may wait until the case is ready to go to trial before withdrawing the reference" because "[a]llowing the bankruptcy court to resolve pretrial issues and enter findings of fact and recommendations of law on dispositive issues ... is consistent with Congress' intent to let expert bankruptcy judges determine bankruptcy matters to the greatest extent possible." *Palm Beach Fin. Partners, supra*, citing *In re Dreis*, No. 94 C 4281, 1995 WL 41416 at * 3 (N.D. Ill. Jan.31, 1995) (internal citations omitted); see also *Stein v. Miller*, 158 B.R. 876, 880 (S.D.Fla.1993) (the defendants were not entitled to have dispositive motions decided by the district court, despite the withdrawal of the reference for the purpose of jury trial). Even if the Defendant had made a jury trial demand, at this point in the case withdrawal of the reference is inappropriate.

### *(ii)    Leaving the reference in place will promote the uniform administration of bankruptcy law.*

Courts have observed that the presence of novel or complex issues of bankruptcy law support leaving the reference in place because "[a]llowing the bankruptcy courts to consider complex questions of bankruptcy law before they come to the district court for *de novo* review promotes a more uniform application of bankruptcy law." *In re Extended Stay, Inc.*, 466 B.R. 188, 207 (S.D.N.Y. 2011). In this case, Trustee's claims directly implicate important questions of bankruptcy law. Specifically, as noted above, Trustee's claims are based on the conduct of Grant Thornton which contributed to and directly resulted in the Debtors' insolvency and the filing of the bankruptcy cases. *See In re Enron Corp.*, 2005 WL 1185804, *3 (S.D.N.Y. May 18, 2005) (finding that leaving reference in place would promote uniform administration of bankruptcy law because the bankruptcy court had long presided over the case, and was familiar with the parties and issues). Thus, this factor strongly supports leaving the reference in place.

### *(iii)    Leaving the reference in place will prevent forum shopping.*

Numerous courts have emphasized that seeking to withdraw the reference in an effort to forum shop is highly inappropriate. *See, e.g., In re Pearlman*, 2008 WL 786809, *2 (M.D. Fla. Mar. 20, 2008) (Conway, J.) (denying motion to withdraw reference because granting motion "would encourage forum-shopping"); *In re Recoton Corp.*, No. 04 Civ. 2466(DLC), 2004 WL 1497570, at *5 (S.D.N.Y. Jul. 1, 2004) (denying motion to withdraw as "a naked attempt at forum shopping"); *In re TPI Int'l Airways, Inc.*, 222 B.R. at 668–69 (S.D. Ga. 1998) (forum-shopping behavior "will not be condoned through permissive withdrawal").

The Defendant has not provided a meaningful explanation as to why ***immediate*** withdrawal of the reference in its ***entirety*** is necessary or appropriate. The Defendant presumably seeks withdrawal of the reference either in an effort to delay this proceeding or find what the Defendant may perceive to be a friendlier court. See *In re TPI Int'l Airways*, 222 B.R. 663, 669 (S.D. Ga.

10

1998) ("the absence of any reason to withdraw" the reference suggests forum shopping). Accordingly, this factor also weighs in favor of denying the Motion.

> ***(iv)   Leaving the reference in place will preserve the parties' resources.***

It is generally recognized that allowing the same bankruptcy court that presided over the debtor's main bankruptcy case to preside over a related adversary proceeding will preserve the parties' resources. *See In re Stone*, 2010 WL 5069698, *2 (M.D. Fla. Dec. 7, 2010) (leaving the reference in place "should also preserve the parties' resources by allowing all pretrial matters in this dispute to be resolved in the same forum as the debtor's estate"); *In re Sw. Florida Heart Grp., PA*, 2007 WL 924472, *2 (M.D. Fla. Mar. 26, 2007) ("the parties' resources would best be conserved by maintaining preliminary matters in bankruptcy court. The Bankruptcy Court is familiar with the proceedings and the parties can clearly address all pre-trial matters more efficiently therein").

Leaving the reference in place will preserve the parties' resources by allowing the same Bankruptcy Court that has presided over the Debtors' cases from its inception, and that is currently presiding over numerous adversary proceedings, to continue presiding over this case. On the other hand, immediate withdrawal of the reference would require the parties to acquaint an additional court with the myriad of pertinent facts and issues of law, unnecessarily costing the parties additional time and resources. *Kapila v. Lowry (In re Pearlman)*, 2008 WL 786809, *2 (M.D. Fla. Mar. 20, 2008) ("withdrawal would delay and disturb the bankruptcy process and create additional expense for the parties"). Accordingly, this factor weighs in favor of leaving the reference in place. This factor therefore heavily supports leaving the reference in place.

> ***(v)   This adversary proceeding asserts core claims.***

There can be no dispute that the Bankruptcy Claims are core matters. Thus, at a minimum with respect to the Bankruptcy Claims, this adversary proceeding is a core matter, with respect to which the Bankruptcy Court is expressly authorized to enter final orders and judgments. 28 U.S.C.

§ 157(b); *see also In re Custom Contractors, LLC*, 462 B.R. 901, 906 (Bankr. S.D. Fla. 2011) (*Stern* "did not hold that bankruptcy judges lack authority to enter final judgments on fraudulent transfer claims or any of the other fifteen types of matters identified in § 157(b)(2)'s non-exhaustive list of core proceedings."); *In re Kane & Kane*, 2012 WL 2899960, *14 (Bankr. S.D. Fla. July 16, 2012) ("This Court believes that it has the power to enter final judgment in any action brought by a trustee, debtor-in-possession or other authorized party in interest under §§ 548 and 544" post-*Stern*). This factor therefore weighs heavily in favor of leaving the reference in place.

    **(vi)**     *Keeping the reference in place will preserve judicial resources.*

Withdrawing the reference at this point would require this District Court (and possibly a separate magistrate judge) to become familiarized with the myriad factual details of the bankruptcy cases that resulted from the conduct at issue in this litigation. In short, withdrawing the reference would be a tremendous waste of judicial resources. By contrast, allowing an expert bankruptcy judge to have the first crack at the various bankruptcy issues presented in this case will preserve judicial resources, as numerous courts have acknowledged. *See, e.g., Stettin v. Regent Capital Partners*, 2012 WL 882497, *4 (S.D. Fla. March 14, 2012) ("Withdrawal of the reference at this stage would result in this Court losing the benefit of the bankruptcy court's experience in both the law and facts, and leading to an inefficient allocation of judicial resources."); *Stone*, 2010 WL 5069698, *1-2 (the bankruptcy system "is intended to promote judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them") (*quoting In re Healthcentral.com*, 504 F.3d 775 (9th Cir. 2007))) (internal brackets omitted). Plainly, the interests of judicial economy support leaving the reference in place.

    **(vii)**     *Prevention of delay supports leaving the reference in place.*

Leaving the reference in place, at least for all pretrial matters and case dispositive motions until jury trial (if any is ultimately appropriate before the District Court), will prevent delay that

would otherwise result from withdrawing the reference. *See Stone, supra* at *2 (denying motion to withdraw the reference and noting to do otherwise would "pit[] the [bankruptcy] case against the competing criminal and civil litigation demands of the district court's docket"). Such delay, with corresponding prejudice to the Debtors' estate and creditors, will benefit no one except the Defendants. Accordingly, this factor favors leaving the reference in place.

### III.   Withdrawal of the Reference Is Premature in any Event.

The Trustee respectfully requests that the Court adhere to the practice in this District of leaving the reference in place to the Bankruptcy Court through the conclusion of all pretrial matters. It is the standard practice of the courts in this District, consistent with the Standing Referral Order, when granting a motion to withdraw the reference, to leave the reference intact for the Bankruptcy Court's consideration of all pretrial matters, up to and including dispositive motions, with the Bankruptcy Court effectively serving as the magistrate for the District Court. This framework is routine practice in the Southern District of Florida. *See Star Light Dist. Inc., v. Newmark Homes Purchasing LP*, 10-cv-61415-JEM [ECF No. 5] (S.D. Fla. Sept. 7, 2011)(granting and denying motion in part and withdrawing the reference "as to the trial of those legal and factual issues that remain pending upon the transfer of the adversary proceeding to [the district court] for jury trial. The Bankruptcy Court reference is affirmed in all other respects, including… having the authority to conduct and rule upon all pre-trial matters, including as necessary any case-dispositive motions."); *Tousa Homes Florida LP v. Cash Building Material Co.,* 10-mc-62223-JEM [ECF No. 6] (S.D. Fla. Sept. 8, 2011)(same); *Dillworth v. Pichardo,* 11-mc-22133-DLG [ECF No. 5] (S.D. Fla. July 5, 2011)(same); *Ginsburg v. Enis,* 10-cv-62405-WJZ [ECF No. 10] (S.D. Fla. July 14, 2011)(withdrawing the case "for the sole purpose of [the district court] holding a jury trial"); *Ginsbrug v. Gilckman*, 10-cv-62416-WJZ [ECF No. 5] (S.D. Fla. July 14, 2011)(same); *Feltman v. HD Const. Supply Ltd.,* 11-cv-61662-JIC [ECF No. 5] (S.D. Fla. July 28, 2011)(withdrawing the

reference "for the purpose of trial" and referring "all pretrial matters, including dispositive motions" to the bankruptcy court.); *Feltman v. Southern Bldg Enter. Inc.*, 11-cv-80508-DTKH [ECF No. 10] (S.D. Fla. Sept. 27, 2011) (same); *Frank v. Lake Worth Utilities*, 11-cv-80734-KAM [ECF No. 5] (S.D. Fla. June 30, 2011) (same).

In the event this Court determines that it is appropriate to withdraw the reference at this time, this Court should nevertheless refer all pretrial matters to the Bankruptcy Court for a report and recommendation or proposed findings of fact and conclusions of law, rather than withdrawing the reference immediately and in its entirety. This is the specific procedure that Congress has prescribed with respect to non-core matters pursuant to 28 U.S.C. §157(c)(1), and this procedure is unaffected by *Stern*. *See, e.g.*, *In re PPOA Holding, Inc.*, Case No. 12-cv-61250-JIC [ECF No. 5] (S.D. Fla. September 13, 2013)[ECF No. 5](Cohn, J.) (noting that "nothing in *Stern* even arguably suggests that the Bankruptcy Court may not preside over discovery and other non-dispositive pretrial matters"); *Kirschner v. Agoglia*, 476 B.R. 75, 82-83 (S.D.N.Y. May 9, 2012) (post-*Stern*, leaving reference in place so bankruptcy court could issue report and recommendation, and noting that "experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time."); *In re DBSI, Inc.*, 467 B.R. 767, 773 (Bankr. D. Del. April 12, 2012) (concluding that *Stern* had no impact on bankruptcy court's ability to issue proposed findings of fact and conclusions of law on non-core matters).

## CONCLUSION

For the reasons set forth herein, Trustee respectfully requests that the Court deny the Motion.

Submitted this 2nd day of May, 2014.

Respectfully Submitted,

GENOVESE JOBLOVE & BATTISTA, P.A.
*Special Counsel for the Trustee*
100 S.E. Second Street, 44th Floor
Miami, FL  33131
Tel.: (305) 349-2300
Fax:  (305) 349-2310

By:  /s/ Gregory M. Garno
    David C. Cimo, Esq., FBN 775400
    dcimo@gjb-law.com
    Gregory M. Garno, Esq., FBN 087505
    ggarno@gjb-law.com
    Jesus M. Suarez, Esq., FBN 060086
    jsuarez@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF Notification and/or U.S. Mail on this 2nd day of May 2014.

By:  /s/ Gregory M. Garno

## SERVICE LIST

### Served Via CM/ECF Notification

Gregory M. Garno, Esq., on behalf of Plaintiff Soneet R. Kapila
ggarno@gjb-law.com; gjbecf@gjb-law.com

David C. Cimo, Esq on behalf of Plaintiff Soneet R. Kapila
dcimo@gjb-law.com, gjbecf@gjb-law.com

### Served Via U.S. Mail

Grant Thornton, LLP
175 West Jackson Boulevard
20th Floor
Attn: Managing Partner
Chicago, Illinois, 60604

Grant Thornton, LLP
666 Third Avenue
Attn: Martin E. Cooperman
New York, New York 10017

Grant Thornton, LLP
175 West Jackson Blvd.
20th Floor
Attn: Legal Department
Chicago, Illinois 60604

Grant Thornton, LLP
666 Third Avenue
Attn: Martin E. Cooperman
Registered Agent
New York, New York 10017

Grant Thornton, LLP
The Corporation Trust Company
Registered Agent
Wilmington, DE 19801

Grant Thornton, LLP
1301 International Parkway
Suite 300
Attn: Managing Partner
Fort Lauderdale, Florida 33323-2874

Elizabeth V. Tanis, Esq.
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Email: etanis@kslaw.com

Cheri Grosvenor, Esq.
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Email: CGrosvenor@kslaw.com

Kristen A. Lynn, Esq.
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-2521
Email: klynn@kslaw.com

L. Louis Mrachek, Esq.
Mrachek, Fitzgerald, Rose,
Konopka, Thomas & Weiss, P.A.
505 South Flagler Drive, Suite 600
West Palm Beach, Florida 33401
Email: lmrachek@mrachek-law.com